IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CAROL DIETZ                          :

                                     :

    v.                               : Civil Action No. DKC 2006-0590

                                     :

JOHN GREENE, ET AL                   :

                                     :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil rights case are Plaintiff's motion for partial summary judgment[1] and Defendants' cross-motion for summary judgment, both pursuant to Fed. R. Civ. P. 56(c).  The issues have been fully briefed and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the reasons that follow, the court will grant the motions in part and deny them in part.

**I. Background**

### A. Factual Background

The following facts are uncontroverted.  On the evening of November 29, 2004, Plaintiff, while in her home, had a telephone conversation with an acquaintance, in which Plaintiff stated that she intended to commit suicide.  Plaintiff's acquaintance telephoned the Montgomery County Police Department to inform the police of Plaintiff's intention to commit suicide and that she

---

[1] Although Plaintiff styles her motion as one for summary judgment, she seeks summary judgment on some, but not all, of her claims.

suffered from anxiety and depression.   In response, several police officers and an Emergency Response Team were dispatched to Plaintiff's home.   Among the officers dispatched was Defendant Greene and his police dog named "Carter."   In total, more than 40 officers were dispatched to Plaintiff's home.   These officers were advised that Plaintiff intended to commit suicide and suffered from anxiety and depression.

The officers established a perimeter around Plaintiff's home. After establishment of the perimeter, Plaintiff's husband arrived at the scene and advised the officers that Plaintiff suffered from bipolar disorder and had attempted suicide on several prior occasions, as well as that Plaintiff had access to a shotgun and ammunition in the home.   The officers then launched multiple Super-Sock projectiles through the closed windows of Plaintiff's home to elicit a response from Plaintiff and draw her out of the home; the projectiles failed to elicit a response from Plaintiff.   A few minutes later, the officers launched tear gas through the windows, but these also did not elicit a response.

Shortly thereafter, multiple officers – including Defendant Greene and his police dog – entered Plaintiff's home in an effort to locate Plaintiff.   Plaintiff's home consisted of three levels, two levels of living space and a basement.   After entering Plaintiff's home, the officers searched and dynamically cleared the first and second floors but did not locate Plaintiff.   During this

2

search, Defendant Greene unleashed the dog and commanded him to find and apprehend Plaintiff.  The dog entered the basement, unaccompanied and out of the view of Defendant Greene or any other officers.  The dog exited the basement after some period of time and returned to Defendant Greene.  The dog then returned to the basement, again unaccompanied and out of the view of Defendant Greene or any other officers.  Defendant Greene and several officers subsequently entered the basement.  In the meantime, the dog bit Plaintiff multiple times.  Plaintiff was unconscious prior to and during the dog bites, as a result of an attempted suicide.

### B. Procedural Background

On March 7, 2006, Plaintiff filed a five-count complaint against Officer Greene and Montgomery County, alleging violations of her federal constitutional rights under 42 U.S.C. § 1983, violations of her state constitutional rights under the analogous Maryland provisions, and battery.[2]  In her complaint, Plaintiff seeks $1 million in compensatory damages and $5 million in punitive damages.  On December 11, 2006, Plaintiff filed a motion for partial summary judgment.  On January 11, 2007, Defendants filed a cross-motion for summary judgment.

---

[2] Plaintiff filed the battery claim against Officer Greene only.

## II. Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson,* 477 U.S. at 250.  The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of South Carolina v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied,* 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See Scott v. Harris*, 127 S.Ct. 1769, 1774-75 (2007) (citing *United States v. Diebold*, 369 U.S. 654, 655 (1962)); *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element. . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323.  Thus, on

those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson,* 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied,* 522 U.S. 810 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

The inquiry involved on a summary judgment motion "necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson,* 477 U.S. at 252. Where the movant also bears the burden of proof on the claims at trial, as Plaintiff here, she "must do more than put the issue into genuine doubt; indeed, [she] must remove genuine doubt from the issue altogether." *Hoover Color Corp. v. Bayer Corp.*, 199 F.3d 160, 164 (4th Cir. 1999) (internal quotation omitted), *cert. denied,* 530 U.S. 1204 (2000); *see also Proctor v. Prince George's Hosp. Ctr.*, 32 F.Supp.2d 820, 822 (D.Md. 1998) (evidentiary showing by movant "must be sufficient for the court to hold that no reasonable

trier of fact could find other than for the moving party")
(internal quotation and italics omitted)). Summary judgment will
not be appropriate unless the movant's evidence supporting the
motion "demonstrate[s] an absence of a genuine dispute as to every
fact material to each element of the movant's claim and the non-
movant's response fails to raise a genuine issue of material fact
as to any one element." *McIntyre v. Robinson*, 126 F.Supp.2d 394,
400 (D.Md. 2000) (internal citations omitted).

When faced with cross-motions for summary judgment, as in this
case, the court must consider "each motion separately on its own
merits to determine whether either of the parties deserves judgment
as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th
Cir. 2003) (internal quotation omitted). *See also havePower, LLC
v. Gen. Elec. Co.*, 256 F.Supp.2d 402, 406 (D.Md. 2003) (citing 10A
Charles A. Wright and Arthur R. Miller, Federal Practice &
Procedure § 2720 (3d ed. 1983)). The court reviews each motion
under the familiar standard for summary judgment, *supra.* The court
must deny both motions if it finds there is a genuine issue of
material fact, "[b]ut if there is no genuine issue and one or the
other party is entitled to prevail as a matter of law, the court
will render judgment." 10A Federal Practice & Procedure § 2720.

## III. Analysis

### A. Claims Against Officer Greene

#### 1. 42 U.S.C. § 1983

Plaintiff alleges that Defendant Greene violated her Fourth Amendment right against unreasonable seizures by using excessive force in the deployment of the police dog and violated her due process rights under the Fourteenth Amendment by displaying "deliberate indifference to Plaintiff's serious medical needs." Paper 1 at ¶ 41.  These alleged constitutional violations form the bases for Plaintiff's claims under 42 U.S.C. § 1983.[3]  Section 1983 "creates 'a species of tort liability in favor of persons who are deprived of rights, privileges, or immunities secured to them by the Constitution.'"  *Randall v. Prince George's County*, 302 F.3d 188, 208 (4th Cir. 2002) (quoting *Carey v. Piphus*, 435 U.S. 247, 253 (1978)).   Thus, § 1983 "provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.,* rights independently 'secured by the Constitution and laws' of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002).

---

[3] 42 U.S.C. Section 1983 provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

### a. Fourth Amendment Unreasonable Seizure Violation

All claims of excessive force against law enforcement officers in the course of a "'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Vathekan v. Prince George's County*, 154 F.3d 173, 178 (4th Cir. 1998) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). This analysis applies to allegations of "attacks by police dogs improperly deployed by their handlers." *Vathekan*, 154 F.3d at 178 (citing *Kopf v. Wing*, 942 F.2d 265 (4th Cir. 1991), *cert. denied*, 502 U.S. 1098 (1992)). Plaintiff claims that Defendant Greene improperly deployed the police dog in part because he failed to issue a verbal warning before doing so. Defendant Greene testified in his deposition that he did not issue a verbal warning before deploying the police dog (*see* Paper 31, Ex. B at 162:9-16) and he does not argue otherwise in his cross-motion for summary judgment (*see* Paper 35 at 8).[4]

A seizure of a person under the Fourth Amendment occurs when a police officer, "by means of physical force or show of authority, terminates or restrains [that person's] freedom of movement, *through means intentionally applied*." *Brendlin v. California*, 127 S.Ct. 2400, 2405 (2007) (emphasis in original) (internal quotations

---

[4] Although Plaintiff's affirmative motion for summary judgment on the excessive force claim is based solely on the failure to issue a verbal warning, she also claims that the release of the dog itself was unconstitutional. Defendants move for summary judgment on all aspects of the excessive force claim.

omitted). Application of the reasonableness standard under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

In this case, more than 40 officers, many (if not all) of whom were armed, surrounded Plaintiff's home. *See* Paper 35 at 8 (characterized by Defendant Greene as "an Emergency Response Team call-out where dozens of officers were on the scene, including conflict negotiators and SWAT officers"). The officers understood that Plaintiff was suicidal, and had attempted suicide in the past; they were also informed that Plaintiff's home contained a shotgun belonging to her husband, although Plaintiff had no history of harming or exhibiting physical violence toward other people. The purpose of requiring a "loud verbal warning" before release of a police dog is to "enable innocent persons to exit the area and afford suspects an opportunity to surrender." *Vathekan*, 154 F.3d at 176 (internal quotation omitted).

Defendant Greene contends that although he "may not have given a warning before deploying his dog, other police officers made their presence known" – including a conflict negotiator, who "loudly attempted contact through a public address system in front

9

of Plaintiff's house." Paper 35 at 8.  Thus, Defendant Greene had

both the opportunity and means to issue a loud verbal warning,

while clearly out of harm's way, that informed Plaintiff of the

potential release of the police dog.  His decision not to do so

means that "Plaintiff was never given the opportunity to comply

with a warning" and, further, he has "offered no practical reason

why [he] could not have given an oral warning" prior to deploying

the dog.  *Park v. Miller*, 2004 WL 2415062, *3 (D.Md. 2004).[5]  Any

argument to the contrary, such as that Defendant Greene believed

that Plaintiff may have been armed, is undermined by the

uncontroverted fact that Defendant Greene "made the decision to

_____

[5] Defendant Greene argues that a warning before deployment of
the police dog "would have been meaningless" because "Plaintiff
deliberately rendered herself unconscious and unable to hear
anything." Paper 35 at 8.  This argument is unavailing because,
under the Fourth Amendment, "the 'reasonableness' of a particular
use of force must be judged from the perspective of a reasonable
officer on the scene, rather than with the 20/20 vision of
hindsight." *Graham*, 490 U.S. at 396.  Indeed, Defendant Greene did
not know that Plaintiff was unconscious at the time he deployed the
police dog without a warning.  *See* Paper 35 at 10 ("The officers
had no knowledge that Plaintiff was unconscious in the basement.").
The plaintiff in *Vathekan* was apparently asleep when she suffered
the police dog bite and, notably, "the Fourth Circuit did not find
this fact dispositive or relevant to its decision." *Park*, 2004 WL
2415062 at *3 n.6 (concluding that Fourth Circuit's "silence on the
point also rebuts an argument made by Defendants that Plaintiff's
inability to comprehend English at the time of the [dog bite]
incident protects them from liability" for failure to issue
warning).  *See also Kopf v. Skyrm*, 993 F.2d 374, 379 (4th Cir. 1993)
("Just as the officers' actions ought not be faulted through 'the
20/20 vision of hindsight,' so also should they not be absolved by
it.") (quoting *Graham*, 490 U.S. at 396)).

release the canine without warning. . . before he observed Plaintiff." *Id.* at *3 n.5.[6]

Nevertheless, without prior warning, Defendant Greene commanded his police dog to find and apprehend Plaintiff; the dog accomplished this task, as intended and expected, by biting and holding Plaintiff, thereby constituting a Fourth Amendment seizure. By commanding and permitting the dog to roam through Plaintiff's home, including the basement where she was found, Defendant Greene "intended that the dog *find and bite*" Plaintiff and the seizure of Plaintiff "was therefore purposeful." *Vathekan*, 154 F.3d at 178 (emphasis in original).

Defendant Greene points to an unpublished Fourth Circuit decision to support the proposition that deployment of a police dog without a verbal warning is not always objectively unreasonable. However, that case, *Estate of Rodgers ex rel. Rodgers v. Smith*, 188 Fed.Appx. 175 (4th Cir. 2006), lies in stark factual contrast to the instant one.  In *Rodgers*, the officer who deployed the police dog had heard another officer shout "Gun!" and he observed that the suspect's right hand was obscured under his shirt.  *Id.* at 181-82.

---

[6] In *Park*, the court denied the defendant officer's summary judgment motion on the § 1983 excessive force claim, based on the police dog bite, because genuine issues of material fact remained as to whether the officer gave a warning before releasing the dog and when the officer made the decision to release the dog; thus, the *Park* court had to assume the truth of the plaintiff's version of facts.  In this case, however, there is no dispute of material fact that Defendant Greene released the dog without a warning and did so before he ever observed Plaintiff.

The officer knew that, prior to this confrontation, the suspect had kidnapped his girlfriend at gunpoint earlier that day and had led police on a high-speed chase, which had resulted in a crash with the officer's vehicle.  *Id.* at 182.  Furthermore, and significantly, "[a]t the time of the deployment," the officer "was no more than 10 feet away from" the suspect and "there was no cover" between them.  *Id.*  There, the Fourth Circuit held that, based on "the particular facts that faced [the] [o]fficer when he deployed the police dog without first warning" the suspect, the officer's decision to do so was not unreasonable and thus did not violate the Fourth Amendment.  *Id.* at 181.

Those sort of exigent circumstances may justify deployment of a police dog without warning, but Defendant Greene has failed to establish any such circumstances here, as discussed *supra*.  Thus, as a general rule, "[a]n attack by an unreasonably deployed police dog in the course of a seizure is a Fourth Amendment violation." *Vathekan*, 154 F.3d at 178.  Even the *Rodgers* court acknowledged that "*Kopf* and *Vathekan* stand at most for the principle that the Fourth Amendment is violated when an officer *who faces no immediate threat* deploys a police dog without prior warning." *Rodgers*, 188 Fed.Appx. at 182 (emphasis in original).  Defendant Greene did not face an immediate threat when he deployed the police dog without a verbal warning.  Accordingly, Plaintiff has demonstrated that the deployment without a verbal warning was an unreasonable seizure

12

under the Fourth Amendment.   The facts surrounding the decision to release the dog, however, are not so clear and Defendants' motion for summary judgment on this aspect of the claim will be denied.

### b. Entitlement to Qualified Immunity

Defendant Greene contends that, even if there was a Fourth Amendment violation, he should be granted qualified immunity because he had an objectively reasonable basis for believing that his actions were lawful.   Under the doctrine of qualified immunity, public officials, such as law enforcement officers, "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The Supreme Court recently rearticulated the procedure for considering a summary judgment motion when faced with a qualified immunity defense:

> In resolving questions of qualified immunity, courts are required to resolve a 'threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?   This must be the initial inquiry.'   If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established. . . in light of the specific context of the case.'

*Scott*, 127 S.Ct. at 1774 (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).   In conducting this mandatory two-step analysis, "the answer to both *Saucier* questions must be in the affirmative in

13

order for a plaintiff to defeat a defendant police officer's motion for summary judgment on qualified immunity grounds." *Clem v. Corbeau*, 284 F.3d 543, 549 (4th Cir. 2002). Likewise, for Plaintiff to prevail on her summary judgment motion, she must show that no disputed material fact exists in the affirmative answers.

Based on the foregoing discussion, Defendant Greene violated Plaintiff's Fourth Amendment right against unreasonable seizures by deploying the police dog without first giving a verbal warning. Nevertheless, Defendant Greene can still obtain qualified immunity if he can show that, based on clearly established law at the time, he reasonably could have believed that his conduct was lawful. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

The Fourth Circuit has instructed that "[i]n determining whether a right was clearly established at the time of the claimed violation, courts in this circuit ordinarily need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose." *Wilson v. Kittoe*, 337 F.3d 392, 402-03 (4th Cir. 2003) (internal quotations omitted); *see also Vathekan*, 154 F.3d at 179 ("Fourth Circuit precedent is one source for determining whether the law was clearly established at the time of the alleged violation."). In other

14

words, plaintiffs can satisfy this inquiry by bringing to the court's attention "any cases of controlling authority in their jurisdiction at the time of the incident which clearly established the rule on which they seek to rely." *Wilson v. Layne*, 526 U.S. 603, 617 (1999); *see also Clem*, 284 F.3d at 553 ("To carry out this analysis, we must consult relevant case law to determine whether a closely analogous situation had been litigated and decided before the events at issue, making the application of law to fact clear.") (citing *Wilson*, 526 U.S. at 617)).

The incident at issue here occurred in November 2004. As the foregoing discussion makes plain, Fourth Circuit precedent as of 2004 – in the form of the *Vathekan* and *Kopf* decisions – "clearly established. . . that failing to give a verbal warning before deploying a police dog to seize someone is objectively unreasonable and a violation of the Fourth Amendment." *Vathekan*, 154 F.3d at 179 (citing *Kopf*, 942 F.2d at 266, 268). *Vathekan* was decided in 1998, while *Kopf* was decided in 1991 – six and 13 years, respectively, before Defendant Greene deployed the police dog without warning and the dog bit Plaintiff.

A specific right is clearly established where, as here, the Fourth Circuit has previously held the existence of such a right. *See Blankenship v. Manchin*, 471 F.3d 523, 533 (4th Cir. 2006) (finding that "specific right at issue" had been "clearly established by this Court" where Fourth Circuit had articulated

that right in case decided five years before violation); *Clem*, 284 F.3d at 553-54 (based on Supreme Court decision 13 years before violation, "constitutional right at issue in this case was 'clearly established'" at time of violation).   Moreover, because Defendant Greene concedes that he did not issue a verbal warning before deploying the police dog, there is no genuine issue of material fact on this point.[7]   Therefore, Defendant Greene is not entitled to qualified immunity.  Accordingly, Plaintiff's motion for summary judgment on the § 1983 claim for the Fourth Amendment violation as it relates to the release of the dog without verbal warning, as to Defendant Greene, will be granted.[8]   It follows, then, that Defendant Greene's motion for summary judgment on this aspect of the claim will be denied.

---

[7] In contrast to this case, in both *Vathekan* and *Kopf*, genuine issues of material fact existed as to whether the officers issued warnings before releasing the police dogs.

[8] Plaintiff also claims a violation of her Fourteenth Amendment right to due process as an additional underlying constitutional violation for her § 1983 claim based on deliberate indifference to serious medical needs.   To the extent that Plaintiff seeks redress for a constitutional violation arising from her seizure by the police dog, the claim is addressed under the Fourth Amendment, and not the more general substantive due process clause.   *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) (*citing Graham*, 490 U.S. at 395).   Similarly, the parallel claim under Article 24 of the Maryland Declaration of Rights is unnecessary and more appropriately addressed under Article 26, the Maryland analogue to the Fourth Amendment.

## 2. *Article 26 of Maryland Declaration of Rights*

Article 26 of the Maryland Declaration of Rights protects the right to be free from unreasonable searches and seizures.[9]   The Maryland courts "have long recognized that Article 26 is *in pari materia* with the Fourth Amendment." *Richardson v. McGriff*, 361 Md. 437, 452-53, 762 A.2d 48, 56 (2000) (internal citations omitted). Therefore, disposition of Plaintiff's § 1983 claim under the Fourth Amendment "dictates the same result on [her] Article 26 claim." *Mazuz v. Maryland*, 442 F.3d 217, 231 (4th Cir. 2006).  Because the court will grant summary judgment to Plaintiff on a portion of the § 1983 claim, Plaintiff also is entitled to summary judgment on the Article 26 claim.   *See id.* ("Although, theoretically, the resolution of claims under the Fourth Amendment and Article 26 can differ, we discern no basis in this record or under Maryland law to support a different construction of these provisions.") (internal citation omitted)).   Accordingly, Plaintiff's motion for summary judgment on the Article 26 claim as it relates to the release of the dog without verbal warning, as to Defendant Greene, will be granted.   Defendant Greene's motion for summary judgment on this claim will be denied.

---

[9] Article 26 provides: "That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted."

### 3. Battery

Under Maryland law, "[a] battery occurs when one intends a
harmful or offensive contact with another without that person's
consent" and the act at issue "must be some positive or affirmative
action on the part of the defendant." *Nelson v. Carroll*, 355 Md.
593, 600, 735 A.2d 1096, 1099 (1999) (internal quotation omitted).
A law enforcement officer is entitled to immunity "from any civil
liability" in tort, however, provided that, in carrying out his
official duties, he acted "without malice." Md. Code Ann. Cts. &
Jud. Proc. § 5-507(b)(1); *see also Gray-Hopkins v. Prince George's
County*, 309 F.3d 224, 233 (4th Cir. 2002) ("Neither statutory nor
common law immunity is available to a Maryland public official who
acts with malice.").  In this context, malice is defined as acting
"with actual malice toward the plaintiff, i.e. with 'ill will,
improper motivation or evil purpose.'"  *Curtis v. Pracht*, 202
F.Supp.2d 406, 417-18 (D.Md. 2002) (quoting *Goehring v. United
States*, 870 F.Supp. 106, 108 (D.Md. 1994)).

Defendant Greene argues only that he cannot be held liable for
battery because the police dog "bit Plaintiff during the lawful
exercise of [his] authority."  Paper 35 at 17.[10]  Defendant Greene
does not expound upon or otherwise explain the purported "lawful

---

[10] It is unclear why Defendant Greene, in his summary judgment
motion, argues that "Plaintiff has failed to state a claim for
battery" (Paper 35 at 16) – a standard appropriate at the motion to
dismiss stage, of course, but not here.

exercise" of authority to which he refers.  As discussed, *supra*, the court has found that Defendant Greene's release of the police dog without warning was objectively unreasonable and will grant partial summary judgment to Plaintiff on that aspect of her claim. Defendant Greene has failed to demonstrate an absence of a genuine issue of material fact as to the lawfulness of the release of the dog itself, such that would entitle him to judgment as a matter of law.  Accordingly, Defendant Greene's motion for summary judgment on the battery claim will be denied.

**B. Claims Against Montgomery County**

### 1. 42 U.S.C. § 1983

Plaintiff claims that Defendant Montgomery County is liable under 42 U.S.C. § 1983 because Defendant Greene committed these alleged violations under color of state law and while in its employ as a police officer.  A municipality, such as Montgomery County, may be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" on a person.  *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978).  To prevail on a claim of § 1983 municipal liability, the plaintiff must "demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged."  *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in

original).  Liability will inure to a municipality "only for those policies or customs having a '*specific* deficiency or deficiencies. . . such as to make the *specific* violation almost bound to happen, sooner or later, rather than merely likely to happen in the long run.'"  *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (internal quotation omitted) (emphasis in original).  In sum, there must be "a close fit between the unconstitutional policy and the constitutional violation."  *Id.*

A provision of the Montgomery County Police Department ("MCPD") Standard Operating Procedures states: "During Emergency Response Team operations, canine officers will not be required to issue a canine warning prior to the release of their canine." Paper 31, Ex. C at ¶ 2.1.5.  Pointing to this provision and an excerpt of Defendant Greene's deposition testimony, Plaintiff argues that Defendant Greene "specifically testified that he relied upon the MCPD Standard Operating Procedures in deploying his canine without first issuing a warning."  Paper 31 at 11.  Plaintiff further contends that ¶ 2.1.5 created a "policy and custom [which] led to Officer Greene's failure to issue a warning before deploying his canine which, unto itself 'was objectively unreasonable and a violation of the Fourth Amendment.'"  *Id.* (quoting *Vathekan*, 154 F.3d at 179).

Although ¶ 2.1.5 of the MCPD Standard Operating Procedures may, on its face, appear unconstitutional in light of the Fourth

Circuit's decisions in *Vathekan* and *Kopf*, discussed *supra*, that alone is not enough for Plaintiff to prevail on summary judgment. Plaintiff has failed to show an absence of disputed material fact as to whether Defendant Greene actually had knowledge of and relied upon ¶ 2.1.5 in releasing the dog without a warning, such that this provision can, as a matter of law, conclusively be said to have been the "moving force" of the Fourth Amendment violation.[11] Accordingly, Plaintiff's motion for summary judgment on the § 1983 claim for the Fourth Amendment violation, as to Defendant Montgomery County, will be denied.

In its cross-motion for summary judgment on this claim, Defendant Montgomery County argues that "[i]nasmuch as Officer Greene did not violate Plaintiff's constitutional rights, there is no municipal liability." Paper 35 at 15. The court already has found that Defendant Greene violated Plaintiff's Fourth Amendment right against unreasonable seizures by releasing the police dog without a warning. With regard to the constitutionality of

---

[11] For instance, in his deposition testimony – as cited by Plaintiff herself – Defendant Greene testified that he did not issue a warning before he released the dog because police officers "have the option if the subject is possibly armed not to do that for our safety and for the safety of the dog." Paper 31, Ex. B at 162:17-20. Defendant Greene noted that he considered this option as part of "our standard operating procedure." *Id.* at 162:21-163:3. Indeed, a separate provision in the procedure provides that "[i]n those incidents were [sic] the canine officer has reasonable grounds to believe a subject is armed, the warning will be at the discretion of the canine officer." *Id.*, Ex. C at ¶ 2.1.4.

Defendant Greene's release of the dog itself, there exists, at the least, a genuine issue of material fact.

Defendant Montgomery County also argues that Plaintiff cannot show that ¶ 2.1.5 of the MCPD Standard Operating Procedures established a policy or custom that was the proximate cause of her injuries.  Although this argument is sufficient to deny Plaintiff's motion for summary judgment on the *Monell* claim, as the court did, *supra*, it alone cannot provide an affirmative basis to grant Defendant Montgomery County's summary judgment motion.  It is well settled that "[r]egardless of whether [it] may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact."  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 323), *cert. denied*, 541 U.S. 1042 (2004).  Here, Defendant Montgomery County has not satisfied this initial burden.  Accordingly, Defendant Montgomery County's motion for summary judgment on the § 1983 claim will be denied.

### 2. Article 26 of Maryland Declaration of Rights

As discussed, *supra*, Article 26 is construed "*in pari materia* with the Fourth Amendment."  *Richardson*, 361 Md. at 452-53. Because this court will deny summary judgment to Defendant Montgomery County on this § 1983 claim, Defendant Montgomery County is not entitled to summary judgment on the Article 26 claim.

22

Accordingly, Defendant Montgomery County's motion for summary judgment on the Article 26 claim will be denied.[12]

### C. Damages

The court has found that Plaintiff's rights were violated by the release of the police dog without verbal warning.   It still remains to be determined whether the release of the dog otherwise also violated her rights.   In her complaint, Plaintiff seeks $1 million in compensatory damages and $5 million in punitive damages against both Defendants.

In order to recover compensatory damages, Plaintiff must show that any of the alleged unconstitutional or tortious conduct by Defendants proximately caused her injuries.  *See, e.g., Farrar v. Hobby*, 506 U.S. 103, 112 (1992) ("no compensatory damages may be awarded in a § 1983 suit absent proof of actual injury"); *Randall*, 302 F.3d at 208 ("in order to justify an award of compensatory damages under [an] Article [of Maryland Declaration of Rights], a plaintiff must show an actual injury resulting from a constitutional deprivation"); *Med. Mut. Liability Soc. of Maryland v. B. Dixon Evander and Assoc., Inc.*, 339 Md. 41, 54-55, 660 A.2d 433, 439 (1995) (in Maryland, "plaintiff must establish that any damages sought are a 'natural, proximate and direct effect of the tortious misconduct'") (internal quotation omitted)).   Absent an

---

[12] Plaintiff did not move for summary judgment, as to Defendant Montgomery County, on the Article 26 claim.

actual injury, "[a] plaintiff's failure to prove compensatory damages results in nominal damages, typically one dollar." *Park v. Shiflett*, 250 F.3d 843, 854 (4th Cir. 2001). Nominal damages are appropriate where the evidence demonstrates that a defendant public official's actions, "while technically violating [a plaintiff's] constitutional rights, did not proximately cause his injuries." *Carter v. Burch*, 34 F.3d 257, 264 (4th Cir. 1994).

In this case, the parties agree that Plaintiff was unconscious when the police dog was unleashed and ultimately bit Plaintiff. She would have been unconscious even had Defendant Greene given a prior verbal warning and presumably unable to hear a warning. To recover compensatory damages based solely on Defendant Greene's failure to give a warning before releasing the dog, Plaintiff must "show that the damages complained of would [not] have occurred. . . if [Defendant Greene] did not violate [P]laintiff's constitutional rights." *Id.*

Defendant Montgomery County is immune from punitive damages under both 42 U.S.C. § 1983 and the Maryland Local Government Tort Claims Act. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); Md. Cts. & Jud. Proc. § 5-303(c)(1). Assuming that Plaintiff can establish entitlement to compensatory damages against Defendant Greene, she may only recover punitive damages against him under § 1983 provided she can show his conduct "to be motivated by evil motive or intent, or when it involves reckless or

callous indifference to the federally protected rights of others."
*Smith v. Wade*, 461 U.S. 30, 56 (1983).  Similarly, under Maryland
law, "[p]unitive damages are available against individuals upon a
showing of actual malice." *Robles v. Prince George's County*, 302
F.3d 262, 273 (4th Cir. 2002) (citing *Bowden v. Caldor, Inc.*, 350
Md. 4, 23, 710 A.2d 267, 276 (1998)).

In order to ascertain the issues remaining for resolution, and
to set an appropriate schedule, the court will order the parties to
submit status reports within 30 days outlining what issues remain
for resolution, including what if any compensatory damages
Plaintiff may be entitled to recover.  A scheduling conference will
also be set.

**IV. Conclusion**

For the foregoing reasons, the court will grant in part and
deny in part Plaintiff's motion for partial summary judgment and
Defendants' cross-motion for summary judgment.  A separate order
will follow.


                        _____/s/_____
                        DEBORAH K. CHASANOW
                        United States District Judge